UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALESSANDRO MASI,

          *Plaintiff*,

   -against-                              18 Civ. 2402 (PAC)

MOGULDOM MEDIA GROUP LLC,        **OPINION & ORDER**

          *Defendant.*
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Alessandro Masi, a photojournalist, claims that Defendant Moguldom Media Group LLC infringed on a valid copyright for photographs he took in 2010 of a luxury maximum-security prison in Norway. After a mass murderer was ordered to be held at the luxury prison in 2011, interest spiked in the prison, and a number of news outlets published Masi's photographs, some with his permission and some without. In reporting on the murder, Moguldom's site, Bossip.com, published eight of Masi's photographs without obtaining Masi's authorization. In 2015, Masi registered his photographs of the prison with the U.S. Copyright Office, and in 2018, he sued Moguldum for displaying his photographs without obtaining proper authorization. Moguldom questions the scope of Masi's copyright registration, and asserts that Masi's claim is untimely because Masi should have been aware of potential infringement when interest spiked in his photographs following the mass murder. For the reasons that follow, the Court GRANTS Plaintiff's motion for summary judgment.

## BACKGROUND

    Plaintiff Alessandro Masi is a professional photojournalist who, at the time of the events at issue in this case, operated a photo licensing business from London, England. (Dkt. 30 ("Masi

Decl.") ¶ 3; Dkt. 27-2 & 31-1 ("Masi Tr.") 6:19-20.) Plaintiff has been in the business of licensing his photographs for over 13 years. (Masi Decl. ¶¶ 3-4; Masi Tr. 6:19-20; 6:25-7:3.)

Moguldom is a for-profit media company, which in 2011 owned and operated the website www.bossip.com. (Dkt. 12 ("Answer") ¶¶ 7-8.)

In or about September 2010, Plaintiff photographed the Halden maximum-security prison ("Halden Prison") in Halden, Norway (the "Photographs"). (Masi Decl. ¶ 5, Ex. A; Masi Tr. 23:22-25, 26:23-27:6.) Plaintiff photographed Halden Prison freelance because it was a luxury prison, something he believed was quite unusual and unique. (Masi Decl. ¶ 6, 8; Masi Tr. 17:20-25, 24:3-12.)

On September 29, 2010, Plaintiff created a gallery of the Photographs on his personal website. (Masi Decl. ¶ 10; Masi Tr. 28:11-12.) On October 1, 2010, Plaintiff published his gallery of the Photographs on the internet to make them available for viewing and selection by potential clients. (Masi Decl. ¶ 11; Masi Tr. 28:13-20, 29:12-14; Dkt. 27-16 ("Beall Decl.") Ex. 5.) Plaintiff then licensed the Photographs to various media outlets for publication. (Masi Decl. ¶ 12.) In particular, a 16-photo selection of Masi's photos of Halden Prison was used to illustrate an article published in the A-magasinet Friday supplement to the Norwegian newspaper *Aftenposten* on November 26, 2010. (Beall Decl. Ex. 6.). Masi was paid NOK (Norwegian Krone) 9,000 for use of the photographs in this article. (*Id.*)

In July 2011, interest in Plaintiff's photographs spiked following a pair of attacks in and near Oslo, Norway. (*Id.* ¶ 6 & Ex. 1.) Anders Breivik killed 69 people, the majority of whom were teenagers at a summer camp, and was ordered detained at Halden Prison. (*Id.*) The order remanding Breivik to detention at the luxury prison generated worldwide news coverage and was covered in *The Daily Telegraph*, *The Atlantic*, and other news outlets. (*Id.*)

On July 25, 2011, Dennis Brack, the creative director for the magazine *Foreign Policy* based in Washington, D.C., sent an email to Plaintiff with the subject line "Norway luxury prison," stating: "I pitched your Norway luxury prison story to editors last fall, but there wasn't a good news peg, unfortunately. Now, of course, there is – and editors are interested." (Masi Tr. Ex. 5.) This communication led to a contract for *Foreign Policy* to publish an online gallery of 12 of the Photographs, for which Plaintiff was paid $600. (Beall Decl. Ex. 8.) The photo gallery was posted to *Foreign Policy*'s website on July 26, 2011. (*Id.* Ex. 2.) One of *Foreign Policy*'s staffers, Sela Foukimoana, promoted the magazine's publication of Plaintiff's photos in a Twitter post that resulted in a Twitter exchange between Foukimoana and Plaintiff. (*Id.* Ex. 3.) In the exchange, Foukimoana stated that the Breivik case had created significant interest in Plaintiff's photos, and Plaintiff replied he was "Glad the images had quite a good response!" (*Id.*)

On July 26, 2011, Plaintiff responded to an inquiry on his Twitter account from MSNBC's i-Media Team concerning his photos, which led to a contract with MSNBC for the publication of two of the Photographs on MSNBC's website in connection with news coverage of the Breivik case. (Masi Tr. Ex. 7.) Plaintiff was paid $300. (Beall Decl. Ex. 9.)

On July 27, 2011, Julie O'Connor, a staff writer at *The Star-Ledger* newspaper in Newark, N.J., reached out to *Foreign Policy* magazine to request permission to reprint the photos in connection with the newspaper's coverage of the Breivik case; Ms. O'Connor was referred to email Plaintiff himself. (Masi Tr. Ex. 6.)

Plaintiff's email and invoice records produced in this case indicate that he also received inquiries concerning his Halden photos in August and September 2011 from news magazines in Germany, Japan and Spain. (Beall Decl. Exs. 10-13.)

On or about July 28, 2011, Defendant published an article on its website,

3

www.bossip.com, entitled "Crazed Norwegian Gunman Headed to Club Med Type 'Luxury Prison' With Flat Screen TVs and Rock Climbing at the URL." (Answer ¶ 13; Masi Decl. ¶ 13 & Ex. B.) Defendant prominently displayed eight of the Photographs in the Bossip article, but did not credit Plaintiff as the author or seek Plaintiff's permission to publish these photographs. (Answer ¶ 14; Masi Decl. ¶¶ 13-15 & Ex. B.) Plaintiff never granted Defendant authorization to copy the Photographs or distribute copies of his work to the public. (Masi Decl. ¶ 16.) There was no communication between Plaintiff and Defendant either prior or subsequent to Defendant's publication of the Bossip article. (*Id.* ¶ 14; Answer ¶¶ 18-19.)

Plaintiff asserts that he did not follow the news story concerning the Anders Breivik shooting. (Masi Decl. ¶ 18; Masi Tr. 54:16-24, 60:5-13, 61:9-10, 62:21-24, 95:14-17.) In 2011, when the story of Anders Breivik broke, Plaintiff did not at any time search the internet for potential infringements of the Photographs, and did not register the Photographs. (Masi Decl. ¶¶ 19-20; Masi Tr. 63:25-64:16, 67:3-20, 67:9-11, 68:2-69:3.) Plaintiff claims that prior to 2015, he did not search the internet for unauthorized use of his work in general, or unauthorized use of his Halden Prison photos in particular. (Masi Decl. ¶ 21; Masi Tr. 84:9-14, 84:24-85:5, 115:11-17.) Plaintiff did not begin searching the internet for infringements of his work until late 2015, after he became aware of an unrelated instance of infringing activity. (Masi Tr. 75:10-13, 76:15-21.)

On December 14, 2015, Plaintiff applied for copyright registration in the United States for a collection of photos titled "Halden Luxury Prison – Norway," with registration VA0001996957 (the "Registration"). (*Id.* 70:10-17 & Ex. 9; Masi Decl. ¶ 22.) The Registration has an effective date of December 14, 2015. (*Id.*) Plaintiff obtained the Registration within five years and eleven weeks after first publication of the Photographs, which took place on October 1, 2010. (Masi Decl. ¶ 24 & Ex. C.) Plaintiff asserts that he registered the Photographs in late

4

2015 after realizing that he needed to protect his work from online infringers. (*Id.* ¶¶ 24-27; Masi Tr. 70:10-73:18; Dkt. 35 ("Beall Supp. Decl.") ¶ 6.) The parties dispute whether the eight photographs Defendant displayed without Plaintiff's permission are included in this registration.

Plaintiff states that he first became aware of Defendant's infringement of the Photographs in the fall of 2016. (Masi Decl. ¶ 27; Masi Tr. 79:4-15.) Plaintiff's investigation in the fall of 2016 showed that his Halden photos had been displayed on numerous third party websites, including on Bossip.com, Slate.com, and Curbed.com, all in connection with news coverage of the Breivik case. (Beall Decl. Exs. 14-17; Masi Tr. Exs. 1 & 12.) Plaintiff asserts that he located the display of eight of his photos on Bossip.com on September 26, 2016. (Masi Tr. 88:16-17, 92:17-21; Dkt. 27-9.) Bossip.com's display of the eight Masi photos remained visible on the site with no changes in substance or display, from July 28, 2011 through January 26, 2017, when Bossip.com's editors removed most third party images from the site's archival pages. (Dkt 27-34 ("Anderson Decl.") ¶¶ 5, 6.)

Plaintiff filed suit against Defendant on March 20, 2018. (Dkt. 7.) Defendant answered the Complaint on April 12, 2018. (Dkt. 12.) On September 28, 2018, Plaintiff and Defendant filed cross-motions for summary judgment. (Dkts. 25, 28.) Plaintiff argues that summary judgment should be entered in its favor because he has a valid copyright to the Photographs, and there is no dispute that Defendant published several of the Photographs without authorization. (*See* Dkt. 26.) Defendant asserts that Plaintiff's claims are time barred by the Copyright Act's three-year limitations period, because he knew, or should have known, of the infringement when interest in the Photographs spiked following the remand of an alleged mass murderer to the Halden prison. (*See* Dkt. 29.)

# DISCUSSION

## I. Summary Judgment Standard

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the moving party to establish the lack of any factual issues. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made an initial showing that no genuine issue of material fact remains, the nonmoving party may not refute this showing solely by means of "[c]onclusory allegations, conjecture, and speculation," *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (internal citations and quotations omitted), but must instead present specific evidence in support of its contention that there is a genuine dispute as to material facts, Fed. R. Civ. P. 56(e). The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "The same standard[s] appl[y] where . . . the parties file[ ] cross-motions for summary judgment." *Ferdman v. CBS Interactive, Inc.*, 342 F. Supp. 3d 515, 524 (S.D.N.Y. 2018) (internal citation and quotations omitted).

## II. Analysis

### A. Copyright Infringement

On summary judgment, the Court may determine liability against a defendant on plaintiff's copyright infringement claim. *See, e.g., Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992). To establish a claim of copyright

6

infringement, plaintiff must show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998).

"A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the certificate holder's copyright ownership, as well as of the truth of the facts stated in the registration." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 401 (S.D.N.Y. 2016) (citing 17 U.S.C. § 410(c)). A certificate of copyright registration is *prima facie* evidence of both valid ownership of copyright and originality. *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012). To be timely, a certificate of registration must be obtained "before or within five years after first publication" of a work. *Scanlon v. Kessler*, 11 F. Supp. 2d 444, 447 (S.D.N.Y. 1998). If not obtained within five years, "the evidentiary weight to be accorded to the certificate of a registration . . . shall be within the discretion of the court." 17 U.S.C. § 410(c).

Plaintiff submitted a copy of a certificate of registration from the United States Copyright Office to prove that he owns a valid copyright for the Photographs. (Masi Decl. Ex. C.) This Certificate of Registration lists: Alessandro Masi as the Copyright Claimant; "Halden Luxury Prison – Norway" as the Title of Work; VA 1-996-957 as the Registration Number; October 1, 2010 as the Date of 1st Publication; and December 14, 2015 as the Effective Date of Registration. (*Id.*) Plaintiff concedes that the Registration was obtained more than five years after first publication of the work. (Dkt. 29 at 7-8.) Courts in this District, however, accord weight to a certificate of registration obtained beyond the five-year period where plaintiff has submitted additional evidence to prove validity of the copyright and such evidence stands

7

uncontradicted by defendant on summary judgment. *See, e.g., Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F.Supp.2d 375, 382 (S.D.N.Y.2008) (certificates of registration issued more than five years after publication are prima facie evidence of valid copyrights because defendants did not offer any evidence suggesting that the copyrights were invalid), *vacated on other grounds by Grecco v. Everett Collection*, No. 07 Civ. 8171(CM)(JCF), 2009 WL 969928, at *1 (S.D.N.Y. Apr. 7, 2009); *Telerate Sys., Inc. v. Caro*, 689 F.Supp. 221, 227 n. 7 (S.D.N.Y.1988) (same); *CJ Prod. LLC v. Concord Toys Int'l Inc.*, No. 10-CV-5712 ENV JO, 2011 WL 178610, at *3 (E.D.N.Y. Jan. 19, 2011) (same). Defendant has not challenged the copyright on the basis of the timeliness of the Registration, and Plaintiff has supplied testimony to support the Registration. Plaintiff has established a valid copyright over the Photographs.

Defendant does not dispute that it published certain of Plaintiff's photographs without Plaintiff's permission. The issue that remains is whether the specific photographs published fall under Plaintiff's copyright. The Certificate of Registration does not list photo identification numbers or titles, or other indicia of what specific photos might be contained within the work that is titled "Halden Luxury Prison – Norway." According to Plaintiff, all of the Photographs are covered by Registration Number VA 1-996-957, and were submitted with his application for Registration to the Copyright Office. (Masi Decl. ¶¶ 24-27; Masi Tr. 70:10-73:18.) Defendant points out that Plaintiff has failed to produce any documents reflecting the deposit material submitted in support of the proffered copyright registration. (Beall Supp. Decl. ¶ 6.) Still, Plaintiff states that Defendant has failed to produce any evidence challenging the validity of the Registration, and that the Court should treat the Registration as *prima facie* evidence of Plaintiff's valid copyright ownership and originality. (Dkt. 29 at 8.)

8

Given Plaintiff's sworn declaration, (Masi Decl. ¶¶ 22-25), and deposition testimony that he included all 45 of the high resolution photos that appeared in his gallery with his registration application, (Masi Tr. 72:3-6; 74:1-75:2), Defendant's speculative statements regarding the scope of the copyright do not create a triable issue of fact as to whether the Registration covers the photographs at issue. *See Chicoineau v. Bonnier Corp.*, No. 18-cv-3264 (JSR), 2018 WL 6039387, at *2 (S.D.N.Y. Oct. 16, 2018); *Goodman v. Universal Beauty Prod. Inc.*, No. 17-CV-1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018). Discovery has concluded, and Defendant could have filed a motion to compel if it felt that document production was insufficient or requested a certified deposit copy from the U.S. Copyright Office to support its position on summary judgment. *See Goodman*, 2018 WL 1274855, at *5.

This case is more like *Chicoineau* and *Goodman*—cases where Plaintiff did not submit the deposit copy he personally submitted to the Copyright Office but Defendant offered only speculation to rebut that the photograph(s) at issue were part of the registration—and less like the cases proffered by Defendant—*Ferdman*, 342 F. Supp. 3d at 529, where the plaintiff could not confirm at his deposition which photographs were submitted to the Copyright Office because his attorney registered them, or *Mantel v. Microsoft Corp.*, No. 16-cv-5277 (AJN), 2018 WL 1602863, at *3 (S.D.N.Y. Mar. 29, 2018), where the evidence used to support the registration were not produced in discovery. Plaintiff's Registration is *prima facie* evidence of copyright ownership, and, when taken into consideration with Plaintiff's sworn declaration and deposition testimony, leaves no triable issue of fact regarding the validity or scope of the copyright to cover the photographs that Defendant admits to having published without Plaintiff's permission.

### B. Statute of Limitations

Civil actions for copyright infringement must be "commenced within three years after the

claim accrued." 17 U.S.C. § 507(b). The Second Circuit has stated that the "discovery rule" governs when the statute of limitations begins to run: "an infringement claim does not 'accrue' until the copyright holder discovers, or with due diligence should have discovered, the infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014). "The standard for whether a plaintiff should have discovered the relevant infringement is an objective one." *PK Music Performance, Inc. v. Timberlake*, No. 16-CV-1215 (VSB), 2018 WL 4759737, at *7 (S.D.N.Y. Sept. 30, 2018).

There is also no triable issue of fact regarding when Plaintiff discovered or should have discovered Defendant's infringement. The infringement occurred in 2011, and Plaintiff did not discover it until September 26, 2016. Defendant does not contest this, but argues that Plaintiff was on inquiry notice before then. Plaintiff's general knowledge that there was interest in his Halden photographs in 2011, however, stemmed from the *lawful* use of his photographs by a publication that paid him a licensing fee to display them. This information did not put him on inquiry notice or provide a storm warning that people were *infringing* on his work. Indeed, Plaintiff testified that he did not think to copyright his Halden photographs until he learned that someone had infringed his other work. (Masi Tr. 75:10-13, 76:15-21.) Plaintiff's knowledge about general interest in the Halden Prison following a gruesome news story is not sufficient to constitute constructive discovery that his photographs of that prison were being infringed. *See, Wu v. John Wiley & Sons, Inc.*, No. 14 Civ. 6746 (AKH) (AJP), 2015 WL 5254885, at *6 (S.D.N.Y. Sept. 10, 2015) (knowledge that textbook publishers generally exceed licenses not sufficient to constitute constructive discovery of specific infringement). He did not have knowledge of any infringement of his work and there was no reason for him to think, or duty for him to scour the internet to find out if, anyone was using his photographs without his consent.

*See id.* ("If that were the expectation, then stock photo agencies and photographers likely would spend more money monitoring their licenses than they receive from issuing licenses.") The cases cited by Defendant do not suggest otherwise.[1]

Defendant attempts to call into question the date of discovery by complaining that Plaintiff is improperly invoking attorney-client privilege to shield communications concerning his awareness of a claim. Plaintiff withheld from document production a September 26, 2016 document on the basis of privilege, which was listed on his privilege log to be regarding "Discovery of infringing content." (Dkt. 27-9.) Plaintiff relies on the date of this document to claim that September 26, 2016 was when he notified his attorney of infringement, and arguably could be using the document as a point of reference for his testimony regarding when he actually discovered his infringement claim in the fall of 2016. (*See* Dkt. 29 at 11; Dkt. 32 ¶¶ 29-30.) But Defendant never filed a motion to compel discovery of this document, and Plaintiff concedes that he has waived the privilege over the document by testifying about it. The cases cited by Defendant relate to discovery issues, and provide no basis for preventing Plaintiff from testifying to the date of discovery of infringement because there is a document on his privilege log that

---

[1] *See, e.g., PK Music Performance*, No. 16-CV-1215 (VSB), 2018 WL 4759737 at *8 ("Defendants' argument that the popularity and success of the Album, DVD, Tour, and HBO Special gave rise to constructive or inquiry notice of Plaintiff's claims is unpersuasive. . . . Defendants have supplied no case law that suggests that a diligent plaintiff is one who obtains all popular or successful albums or concert DVDs at any given time and scours each song and the liner notes to discover potential infringements."); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 440 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (plaintiffs, who had been sexually abused, were not unaware that school defendants had injured them; they were aware of their abuse at the time it occurred and of the identities of their abusers and those who employed them); *Sohm v. Scholastic Inc.*, No. 16-CV-7098 (JPO), 2018 WL 1605214, at *11 (S.D.N.Y. Mar. 29, 2018) ("In order to raise a genuine factual dispute over the date on which the claims accrued, Scholastic must identify some affirmative evidence that would have been 'sufficient to awaken inquiry and prompt an audit' on Plaintiffs' part."); *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 46 (1st Cir. 2008) (no inquiry notice even where architect knew that project was being built, for which architect had previously provided copyrighted plans and drawings); *Jensen v. Snellings*, 841 F.2d 600, 608 (5th Cir. 1988) (memorandum contained "not merely 'storm warnings,' but nearly all the facts on which the . . . claims . . . were subsequently brought"); *Lewin v. Richard Avedon Found.*, No. 11-CV-8767(KMW) (FM), 2015 WL 3948824, at *9 (S.D.N.Y. June 26, 2015) (email made clear that meeting left defendant with an understanding that plaintiff possessed and claimed copyright ownership over photographs stemming from plaintiff's time working for defendant).

relates to that issue.[2]

Defendant provides no other evidence to show that Plaintiff was on notice of infringement before he says he was. Plaintiff's suit was filed within the three year statute of limitations under 17 U.S.C. § 507(b), which runs from March 20, 2015 to March 20, 2018. Plaintiff filed the lawsuit on March 20, 2018, less than three years after discovering the infringement on September 26, 2016. At the earliest, Plaintiff might arguably have been on inquiry notice of infringement in late 2015—which would still be within the limitations period—when he started searching the internet for infringements of his works generally and then began registering his works. (Masi Decl. ¶ 21.)[3]

The Court rejects Defendant's argument, raised in its reply brief in support of its motion for summary judgment, that the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) precludes a claim of infringement based on conduct that occurred more than three years prior to suit. Courts in this district have recognized that *Petrella* did not overrule the Second Circuit's decision in *Psihoyos*, 748 F.3d at 124: The discovery rule still applies in the Second Circuit. *See Sohm v. Scholastic Inc.*, No. 16-CV-7098 (JPO), 2018 WL 1605214, at *10 (S.D.N.Y. Mar. 29, 2018); *Energy Intelligence Grp., Inc. v. Scotia Capital (USA) Inc.*, No. 16-cv-00617 (PKC) (KNF), 2017 WL 432805, at *2 (S.D.N.Y. Jan. 30, 2017).

---

[2] *See, e.g., Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420, 423 (S.D.N.Y. 1976) (overruling plaintiffs' objection to deposition questions where privileged information related to statute of limitations); *WLIG-TV, Inc. v. Cablevision Sys. Corp.*, 879 F. Supp. 229, 235 (E.D.N.Y. 1994) (granting motion to compel because attorney-client privilege waived "when a plaintiff seeks to overcome a statute of limitations bar by interjecting equitable doctrines"); *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (upholding subpoena of attorneys to testify regarding when plaintiff knew or should have known that defendant's statement was false).

[3] In his deposition, Masi states that he started registering his works bit by bit in 2015 after learning that an unrelated photo was infringed. (Masi Tr. 75:4-76:16.) Defendant somehow uses this testimony to argue that Masi's inquiry notice of Defendant's infringement must have actually occurred in 2014. (Dkt. 26 at 12-13.) This appears to be an attempt by Defendant to tie a 2014 copyright registration submitted by Masi to the Copyright Office to when he first learned of infringements generally. (Dkt. 27 ¶ 26.) This leap in logic is unsupported by the record.

There is no issue of triable fact regarding whether the Copyright Act's three-year limitation period under 17 U.S.C. § 507(b) bars Plaintiff's claim.

### C. Affirmative Defenses

Defendant's remaining affirmative defenses are dismissed. Plaintiff clearly states a claim; Plaintiff has established that he has a valid copyright over the Photographs; and Defendant indicated that it would drop its fourth affirmative defense (work for hire) and fifth affirmative defense (transfer of website ownership) if the case proceeded to trial. (Dkt. 33 at 11 n.2.)

### CONCLUSION

Plaintiff's motion for summary judgment on the issue of liability is granted. Since the parties have not raised any jury issues respecting damages, the Court will refer the matter to Magistrate Judge Barbara C. Moses for a Damages Hearing and a final determination on the amount of damages.

Dated: New York, New York
July __, 2019

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge